**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERRY GRECO,

            Plaintiff,

v.                                                      Case No. 12-CV-12212
                                                      Honorable Denise Page Hood

LIVINGSTON COUNTY, a Municipal
Corporation, and DEPUTY ANTHONY
CLAYTON, in his Individual and Official
Capacities,

            Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

      This matter involves the alleged use of excessive force by the Livingston County police. Now before the Court is Defendants' Motion for Partial Judgment on the Pleadings. Having considered the parties' briefs and oral arguments, this matter is now appropriate for final determination. For the reasons stated below, Defendants' Motion for Partial Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

      Plaintiff Terry Greco attended a self-help conference in Howell, Michigan. She consumed wine before leaving the conference. She left the conference around 11:15 pm to drive back to her hotel. She became lost en route to the hotel and pulled onto the side of the road. It was raining heavily and her car became stuck in the mud. When she was unable to free her car, she went by foot to a nearby gas station. She approached two EMS technicians for help. They accused her of being intoxicated and indicated that they would call the police. Plaintiff panicked and hid in a wooded

area behind the gas station.

Defendant Anthony Clayton was dispatched to the gas station with his police dog, Diago. Two other deputies from the Livingston County Sheriff's Department also accompanied Clayton. The EMS technicians told Clayton that Plaintiff's car was stuck in the mud, indicated which direction she went, and described her as a woman wearing a pink t-shirt, jeans and flip flop shoes. Clayton and the deputies drove into the wooded area and found Plaintiff sitting on the ground with her hands on her head.

The police dog, Diago, attacked Plaintiff and bit her thigh for 20 seconds. Plaintiff screamed that Clayton "Get [Diago] off my leg!" [Docket No. 1, Pg ID 4] Clayton responded by directing Plaintiff to "Shut up," and "Stop moving." *Id.* When Diago stopped biting her, Plaintiff requested that Clayton take her to the hospital. *Id.* Clayton responded, "Shut up . . . you're going to make this dog even worse . . . you keep it up, princess." *Id.* Another deputy indicated, "You should have seen the last guy." *Id.*

Plaintiff alleges that she sustained numerous bite wounds and contusions on her right leg that required eight staples and surgical drainage. She claims that she is now permanently and seriously disfigured on her right leg. She filed suit against Livingston County and Deputy Clayton on May 21, 2012 alleging: Excessive force pursuant to 42 U.S.C. § 1983 and/or Fourth Amendment and/or Eighth Amendment and/or Fourteenth Amendment [Count I]; Gross Negligence, Willful and Wanton Misconduct and Assault and Battery [Count II]; and Failure to Train, Inadequate Policies and/or Procedures, Illegal Custom and/or Practices [Count III].

## II.     STANDARD OF REVIEW

2

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleading after close of the pleadings. The Court applies the same standard of review for a Rule 12(c) motion as it would for a motion under Rule 12(b)(6). *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008). The Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 337 (6th Cir. 2007). The Court will not accept as true the plaintiff's legal conclusions or unwarranted factual inferences. *Id.*

## III.   ANALYSIS

### A.   Excessive Force

Plaintiff brings her excessive force claim against Clayton under the Fourth, Eighth, and Fourteenth Amendments to the Constitution. Defendants argue that Plaintiff's excessive force claim can only proceed under the Fourth Amendment because Plaintiff only complains of actions that occurred before and during arrest. Plaintiff counters that both the Fourth, Eighth and Due Process Clause of the Fourteenth Amendment apply to her claim.

A 42 U.S.C § 1983 action requires the plaintiff to demonstrate that [1] she was deprived of a right guaranteed by the Constitution or laws of the United States [2] by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978). In considering Plaintiff's § 1983 excessive force claim, the Court first determines the specific right violated. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). The Fourth Amendment's prohibition against unreasonable searches and seizures protects an individual from excessive force arising during the course of an arrest or investigatory stop. *Graham*, 490 U.S. at

3

394.  In *Aldini*, the Sixth Circuit held that the end point of the Fourth Amendment is the probable-cause hearing.  *Id.* at 866–67.  The Eighth Amendment's guarantee against cruel and unusual punishment is applicable when a claim for excessive force is based on conduct that occurred while the plaintiff was serving a term of imprisonment.  *Aldini*, 609 F.3d at 864 (citing *Whitley v. Albers*, 475 U.S. 312, 318-22 (1986)).  In contrast, a claim for excessive force is subject to the Fourteenth Amendment when neither the Fourth nor Eighth Amendments apply.  *Id.* at 864, 867.

Plaintiff concedes that "she is complaining about excessive and unnecessary force used on her during the course of her arrest by defendant Clayton." [Docket No. 12, Pg ID 90].  The facts supporting her claim only describe events that took place before she was arrested.  She does not allege that any unconstitutional behavior occurred after the probable-cause hearing or after a conviction.  By her own admission, the Fourth Amendment, and not the Eighth or Fourteenth Amendments, applies to her excessive force claim.  The Court limits Count I to a Fourth Amendment analysis only and dismisses Plaintiff's claim to the extent that it seeks redress for excessive force under the Eighth and Fourteenth Amendments.  *See Graham*, 490 U.S. at 395 ("all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment.").

### B.    Gross Negligence

Defendants argue that Plaintiff's gross negligence claim is truly an intentional tort claim.  They contend that under Michigan law Plaintiff cannot maintain a cause of action for gross negligence with the same factual basis as an assault and battery intentional tort.  Plaintiff asserts that Defendants owed her a duty to perform their duties in a competent manner; a duty that they failed

to perform.

In Count II, Plaintiff's Michigan claims for gross negligence, wilful and wanton misconduct, and assault and battery are grouped together and based on Diago biting her. Plaintiff alleges that "Clayton owed [her] a duty to . . . act prudently and with reasonable care and to avoid the use of unnecessary, illegal and unreasonable, excessive force." [Docket No. 1, Pg ID 6] The very duty that Plaintiff alleges was breached was an obligation to refrain from use of excessive force against her. It is apparent that Plaintiff relies on the same nucleus of events to support her excessive force, assault and battery, and gross negligence claims.

Michigan Courts have repeatedly rejected attempts to transform an intentional tort claim into gross negligence. *VanVorous v. Burmeister*, 262 Mich. App. 467, 487, 687 N.W.2d 132 (2004) (rejecting the plaintiff's attempt to transform an excessive force claim into a claim of gross negligence); *Smith v. Stolberg*, 231 Mich. App. 256, 258–59, 586 N.W.2d 103 (1998) (trial court properly granted summary disposition when "plaintiff's proper cause of action is for the intentional tort of battery, and not negligence."); *see also Latits v. Philips*, 2012 Mich. App. LEXIS 1953, *14 (Mich. Ct. App. Aug. 21, 2012) ("this Court has rejected attempts to transform claims involving elements of intentional torts into gross negligence.") (quoting *VanVorous*, 262 Mich. App. at 483–84); *Gupta v. Crane*, 2012 Mich. App. LEXIS 791, *10–12 (Mich. Ct. App. Apr. 26, 2012) (finding that the "gravamen of Mr. Gupta's claim is that the officers used excessive force in effectuating his arrest" and that this claim failed because the plaintiff could not "recast intentional tort claims as gross negligence claims."); *Norris v. Police Officers*, 292 Mich. App. 574, 582, 808 N.W.2d 578 (2011) (finding that trial court erred in not dismissing plaintiff's gross negligence claim when "the claim of gross negligence [was] premised on the alleged [intentional tort of] assault . . .

5

."); *Grable v. Brown*, 2005 Mich. App. LEXIS 3173, *5–6 (Mich. Ct. App. Dec. 20, 2005) (finding that trial court erred in failing to vacate jury verdict finding gross negligence when plaintiff's claim was premised on claim for excessive force.).  The Court finds that Plaintiff's gross negligence claim is premised on an intentional tort.  Pursuant to Michigan law, Plaintiff cannot artfully label her claim as gross negligence in order to transform an intentional tort claim into a gross negligence claim. Plaintiff's claim for gross negligence is dismissed.

### C.      Failure to Train

Plaintiff's failure to train claim is premised on Livingston County's failures and negligent retention, entrustment, training, supervision, and discipline.  She alleges as follows:

a. Failure to appoint or enforce a written canine policy and a selection process standard for handlers and dogs, including failure to choose handlers with maturity, judgment and integrity and failure to choose dogs that demonstrate an appropriate response to verbal command by the handler;

b. Negligent retention of individuals like Clayton whose character and personality pose a danger to the public in general and Terry in particular when "armed" with a police dog;

c. Negligent entrustment of Diago to Clayton, a handler who does not display the judgment required to be "armed" with a police dog;

d. Negligent training or failure to train Clayton and Diago on the proper encounter of an unarmed, compliant individual like Terry;

e. Negligent supervision or failure to supervise the standards, certifications, appointment of Clayton as a handler, appointment of a Diago, retention of both Clayton and Diago, assignment of the Clayton-Diago canine team to a suspected misdemeanor traffic violation, lack of proper discipline of Clayton, and all other incidents learned through the discovery process;

f. Negligent discipline or failure to discipline Clayton for Diago's attack of an unarmed woman, Terry, to ensure that both misbehaving dog and officers exhibiting bad judgment in the use of canine force receive corrective training, which caused an atmosphere of lawlessness; and

       h.     All other incidents learned through the course of discovery.

[Docket No. 1, Pg ID 9–10].

Defendants contend that Plaintiff cannot maintain an action against Livingston County because her constitutional violation is premised on negligence and she has failed to allege an affirmative act by Livingston County. Defendants cite the Supreme Court case of *Daniels v. Williams* to support their proposition that a constitutional deprivation sounding in negligence must be dismissed. 474 U.S. 327 (1986). In *Daniels*, the Supreme Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328 (emphasis in original). There, the petitioner sought damages when a pillow left by a deputy employed by the jail caused the petitioner to fall on a prison stairway. *Id.* The Supreme Court explained that, notwithstanding the fact that the deputy was employed by the city jail and the petitioner was an inmate, there was no constitutional tie to the complained deprivation. *Id.* at 332.

The majority of Plaintiff's claims involve Livingston County's negligence. She does not make any allegations that Livingston County's failure to train and supervise Clayton was the result of its deliberate indifference. Excluding the events that took place with Plaintiff, Clayton, and Diago, the Complaint does not allege facts that would tend to support her allegations that Livingston County was negligent in its training and supervision of Clayton. However, this could be implied from the claims as alleged, including the statements about the physical condition of someone else bitten by Diago. It is plausible that discovery could reveal facts that would demonstrate that the circumstances of this case were related or caused by Livingston County's deliberate indifference as to the supervision and training of Clayton and Diago. As this point in litigation, Plaintiff should not

be required to prove her case with certainty. Yet, Plaintiff's claims that Livingston County was negligent in its entrustment, retention, and discipline of Clayton sound more in negligence than a cognizable constitutional violation. There is no indication that these alleged failures by Livingston County caused or were somehow related to a deprivation of Plaintiff's constitutional rights. However, the Court will allow Plaintiff to proceed through discovery with her negligent training and supervision claims.

## IV.   CONCLUSION

Accordingly,

IT IS ORDERED that Defendants' Motion for Partial Judgment on the Pleadings [Docket No. 10, filed October 2, 2012] is GRANTED IN PART and DENIED IN PART. In summary, the Court: [1] dismisses the claim of excessive force to the extent it relies on the Eighth and Fourteenth Amendments; [2] dismisses the gross negligence claim in its entirety because it is premised on an intentional tort; and [3] allows Plaintiff to proceed through discovery on her negligent training and supervision claims.

IT IS SO ORDERED.


S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  April 23, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 23, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager